*975 OPINION.
ARundell:
The contention of petitioner Paul H. Quinn, that collection of the assessment against him is barred, seems to us to lack any tenable foundation. The assessment was timely made and the waivers executed kept the period for collection alive to a date beyond that on which the notice of deficiency was issued. We accordingly hold for the respondent on the limitations issue.
The principal controversy is the amount of income, if any, realized by the Quinn brothers in 1918 and 1919 out of the sale by the Quinn Party of its interest in the Koogler lease. Petitioners contend that the share of profits on the sale that came to them was a gift, inasmuch as they owned no interest in the lease. Alternatively, it is claimed that the profit should be computed on what they call the deferred payment basis, that is, that their entire cost should be recovered before any gain is realized. The respondent, by amended answer, alleged that all the profit was realized in 1918 and claims an increased deficiency for that year.
We have set out in the findings of fact the several representations of Paul H. Quinn that he was the owner of an interest in the Koogler lease, and that he had acquired his interest at the stated cost. Counsel for the parties agreed that the evidence in Paul’s case should be taken as the evidence in the "other cases. From this we take it that the other two Quinn petitioners made the same rep *976 resentations. Thus we have three petitioners, beginning with returns filed in June, 1919, alleging consistently over a period of years that they were owners of an interest in the property. As late as January, 1929, each of the three by amended petition asserts that he “ does not dispute the cost determined by the respondent ” in his computation of gain realized for 1919. Now, as against these cumulative representations of three of the interested parties, one of them testifies that he and the other two did not own any interest. We are not disposed to accept this testimony as overcoming the fact previously represented and insisted on and as found by the respondent. We accordingly hold that the three Quinn brothers each acquired an interest in the Koogler lease in 1917 at a cost to each of $53,333.33.
The respondent computed the profit realized by the Quinns on the theory that under the contract with the Magnolia Petroleum Company each sold one-half of his interest in the Koogler lease. The parties are now agreed that under that contract each sold two-thirds of his interest. As the parties are further agreed on the cost of the interest of each petitioner and the amount received on the sale thereof, the next question we are concerned with is the year or years in which the profit was realized.
The respondent has not established to our, satisfaction his claim that the entire profit was realized in 1918. He offered no evidence to establish that the promise of the Magnolia Petroleum Company to pay for the assigned interests had any value. As the claim in this respect is one for an increased deficiency, the burden is on the respondent to establish it, and he has failed to do so.
In determining the deficiencies the respondent spread the receipts over the three years in which they came in, and determined the profit by treating as cost of the portion sold in each year a sum which was in the same ratio to total cost as the amount received within the year was to total receipts.
Counsel for petitioners were requested to furnish the Board with a method of computation that, in their opinion, would correctly reflect income on the basis of the cost and selling prices which are in the record in these proceedings. They have failed to do so. In their brief they take the position that none of the receipts constitute taxable income until such time as the full cost is recovered, relying principally on United States v. Bolster, 26 Fed. (2d) 760, and Logan, v. Burnet, 42 Fed. (2d) 193; aff'd., 283 U. S. 404. In the Bolster case a widow elected to take under her husband’s will in lieu of dower, and the question was whether the annual payments she received pursuant to her election were income before they aggregated a sum equal to the value of her relinquished dower rights. The court held that they were not, on the theory that the case was similar to the purchase of an annuity and that there could be no income until the *977 premiums were returned. That is not the case here. This case involves the sale of property. Nor is the Logan case in point. There, a part of the consideration was a promise to pay, which was contingent on the amount of ore removed from a mine, and there was no requirement for the mining of either a minimum or maximum tonnage. Here, we have promises to pay definite specified amounts in no way contingent upon operation.
By respondent’s method- he spreads cost in proportion to receipts. Under other circumstances this method might not be proper. But under the facts developed here, the respondent’s method seems to us to reflect income more correctly than any other method proposed. We accordingly affirm the respondent’s allocation of income from the sale over the period in which payments were received, subject to correction of amounts as stipulated by the parties.
Our holding on the question of income from the sale of the Koogler lease, while so far directed to the Quinn cases, is equally applicable to the Barclay case. In all of them the parties have agreed on the amount of income realized if the respondent’s method is correct.
The next question, which is in the Barclay case only, is the amount of loss sustained, if any, by reason of the claimed worthlessness of stock occurring in 1919. Prior to 1919 Barclay bought stock in several corporations at an aggregate cost of $18,132. In addition to this, he advanced $4,000 to one of the companies in 1919 to help it meet its expenses. He claims that all the stock became worthless in 1919 and that he is entitled to a loss deduction by reason thereof in the amount of $22,132.
We are satisfied that the stock of the California National Gold Mining Company became worthless in 1919. The company operated during part of 1919, but it was evident before the close of the year that the venture was hopeless. Early in 1920 the promoter of the enterprise visited the properties and immediately thereafter they were abandoned. It is in evidence that Barclay sold the stock to his son in 1920 for $10. This is explained, however, as due to Barclay’s belief that it was necessary to make some sort of a sale to establish a loss. We accordingly hold that a deduction for the cost of the stock, $5,000, is proper for the year 1919.
The sum of $4,000 advanced to the California Company, while technically not an assessment on the stock, was nevertheless paid in to meet operating expenses solely by reason of petitioners’ stock-holdings. It was evident within the year that no recovery hould be had. We think the sum is deductible as a loss.
The Penn-Kansas Oil Syndicate went into the hands of a receiver in October 1919, and the stockholders never received any distributions on their stock. Olcott Payne, a director and general manager of the company, and Hartman, secretary to Barclay, testified to the *978 worthlessness of the stock in 1919. We are satisfied that the loss was suffered in that year, and the deduction should be allowed.
The evidence respecting the status of the other companies in 1919 is too meager to permit the finding of any facts. Barclay’s former bookkeeper testified that he was told in 1919 by “ the stock manager of Elkins, Morris & Company ” that the stock of the Emerson Motors Company had no value. He further testified that Barclay was told in 1918 or 1919 by M. F. Quinn that the Mapes-Johnson Mining Company “had become defunct.” This evidence is obviously insufficient to support the claim of worthlessness in the year 1919. There is no evidence concerning the Palmer-Utah Oil stock, except the statement of the bookkeeper that it became worthless in 1919.
The original petitions filed in the Quinn proceedings alleged error in the depletion deductions computed by the respondent. At the hearing counsel for the parties agreed that if the respondent’s contention as to 1918 is correct, then depletion is not an issue, but if incorrect, depletion would be computed under Rule 50. It is not exactly clear to us what the parties meant by this agreement; consequently we leave the matter of depletion open for settlement under the rule mentioned. We may say, however, that we understand from statements of petitioners’ counsel at the hearing that claim for depletion on discovery valuation has been abandoned, and they are foreclosed from making any further claim on that basis.

Decision will he entered wider Rule 50.